UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
:
PETROBRAS ENERGIA S.A., : CASE NO. 5:04-CV-2433
:
       Plaintiff, :
:
vs. : OPINION AND MEMORANDUM
: [Resolving Doc. Nos. 52]
AMERICAS INTERNATIONAL, INC., :
and WAYNE STAIR :
:
       Defendants. :
:
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Petrobras Energia S.A. ("Petrobras")[1] moves the Court for Partial Summary Judgment as to Defendants Americas International Inc.'s ("Americas") and Wayne Stair's ("Stair") counterclaims. [Doc. No. 52]. Defendants oppose Plaintiff's motion. After considering the evidence and arguments advanced by the parties, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

I.    Procedural History

On December 9, 2004, Plaintiff Petrobras, an Argentine Corporation, filed this action. In its

---

[1] Unless otherwise specified, "Plaintiff Petrobras" will hereinafter refer to Petrobras and its predecessor's in interest, Pecom Energia S.A. and Pasa S.A.

-1-

Case No. 5:04-CV-2433
Gwin, J.

Second Amended Complaint, filed on July 15, 2005, Plaintiff Petrobras alleges various claims against Defendants including breach of contract, breach of fiduciary duty, fraud, conversion, and tortious interference with contract.

On February 7, 2005, Defendants filed their initial response and counterclaim and on August 17, 2005 they filed an amended response and counterclaim. With their counterclaim, Defendants allege that Plaintiff: (1) failed to pay the Defendants commissions the Defendants earned under an oral representation agreement between the parties, all violating Ohio Rev. Code § 1335.11(C); and (2) breached the same representation agreement by not reimbursing Americas for shipping expenses and for a double payment that the Defendants say they made to Plaintiff on a sales invoice. Defendants also allege that Plaintiff wrongfully interfered with a business or contractual relationship between Defendants and a third party, Carlisle Tire & Wheel Company ("Carlisle"), thus leading to liability for tortious interference with contract or business relations and for deceptive trade practices violating the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 1465.01-1465.04.

In response to Defendants' counterclaims, Plaintiff filed a Partial Motion for Summary Judgment on June 27, 2005. [Doc. No. 52]. In that motion, Plaintiff argues that it should receive summary judgment on Defendants' breach of contract claim and their claim under Ohio Rev. Code § 1335.11 because: (1) Defendants have produced no evidence that Defendants made double payments to Plaintiff, that Plaintiff failed to reimburse Defendants for business expenses, or of any unpaid commissions; (2) Defendants similarly have produced no evidence that Plaintiff acted in bad faith or in a willful, wanton, or a reckless manner concerning the alleged unpaid commissions, and (3) Argentine law applies to the business

Case No. 5:04-CV-2433
Gwin, J.

agreement between Plaintiff and Defendants, thus precluding recovery under Ohio Rev. Code § 1335.11. The Plaintiff also seeks summary judgment on Defendants' claims for tortious interference with contract and for violation of the Ohio Deceptive trade Practices Act, Ohio Rev. Code §§ 1465.01-1465.04, arguing that: (1) Defendants can produce no evidence that Plaintiff made a false statement or intentionally procured Carlisle's breach of contract with Defendant; (2) Defendant can produce no evidence that Plaintiff caused Carlisle to stop doing business with Defendant; and (3) any statements Plaintiff did make are qualifiedly privileged.

In opposing Plaintiff's motion for summary judgment, Defendants contend that Plaintiff failed to meet its initial burden of showing the absence of a genuine issue of material fact. As to their claim under Ohio Rev. Code § 1335.11, Defendants argue that the statute specifically governs transactions, such as the one in question, where a principle engages a sales representative to solicit orders in Ohio. Defendants further argue that they have put forth sufficient evidence, specifically the affidavit of Defendant Stair, to establish an issue of fact with regard to whether Plaintiff interfered with Defendants' contractual or business relationship with Carlisle.

II.     Relevant Facts

Plaintiff Petrobras, a petroleum and petrochemical company, inherited the present lawsuit in 2003 when it acquired all of the assets of Pecom Energia, S.A. ("Pecom"). Like Plaintiff, Pecom was a petroleum and petrochemical company that manufactured various products, including synthetic rubber. Defendant, Americas, is an Ohio corporation, and Defendant Wayne Stair is the sole shareholder, director, and officer of Americas.

-3-

Case No. 5:04-CV-2433
Gwin, J.

The relationship between Plaintiff and Defendants began sometime in late 1996 or 1997 when Defendant Stair contacted Pasa S.A. ("Pasa"), a predecessor in interest to Pecom.[2] At this time, Pasa and Stair entered into an agreement for Americas to operate as an importer of record and sales representative for Pasa. In this role, Americas imported Pasa's synthetic rubber products. Americas then, on Pasa's behalf, offered the products for sale to third party buyers within the United States.

In 2000, Pecom acquired all of the assets of Pasa and continued to deal with Defendants under the above-described agreement.[3] The business between Pecom and Defendants proceeded as follows: Just as before, Americas imported Pecom's products and sold them on behalf of Pecom to both Pecom's customers and Americas' customers. Pursuant to the agreement, Americas earned a commission on all sales Americas made on behalf of Pecom, though the parties now disagree as to the rate of commission. Plaintiff contends the rate varied from sale to sale, while Defendants maintain that the rate was a steady three percent. The parties also disagree as to several other alleged terms of the representation agreement. For example, Plaintiff claims that the agreement prohibited Defendants from selling products that were in competition with Pecom's products and that all aspects of the agreement are governed by Argentine law. Defendants deny these allegations and further allege that Pecom was required under the agreement to reimburse Americas for any expenses it incurred while acting as an importer of record and sales representative of Pecom. Aside from sales made under the representation agreement, Pecom also sold

---

[2] Plaintiff initially stated in its complaint that Pasa contacted Defendant Stair about forming a relationship. However, Plaintiff now contends in its motion for summary judgment that Stair first contacted Pasa. As confirmation, Plaintiff offers Stair's own deposition statements. *See* Stair Dep. 457:25-458:3, June 23, 2005.

[3] Defendants allege that in February of 2001, Pecom attempted to solidify their relationship with a proposed written agreement. Defendants found certain terms unacceptable and thus refused to sign. Pecom and Americas then continued their business relationship pursuant to the existing oral agreement.

-4-

Case No. 5:04-CV-2433
Gwin, J.

products directly to Americas. Americas either kept these products for its own use or resold them to its own customers.

A large portion of the parties' present dispute centers on their business dealings with Carlisle. The parties began selling to Carlisle in late 1998. At that time, Defendant Americas, acting a Pasa's sales representative, started selling Pasa products to Carlisle. Defendants claim also to have developed and maintained independent business dealings with Carlisle on Americas's own behalf.

According to Plaintiff, whenever Carlisle placed an order for Pecom products, Pecom issued invoices showing Carlisle as the purchaser, but then delivered these invoices as well as the necessary bills of lading to Americas. Plaintiff apparently intended that Americas forward these invoices to Carlisle. Instead, Americas allegedly issued new invoices on its own letterhead.

Both Plaintiff and Defendants agree that Carlisle received all of the Pecom goods it ordered and that Carlisle paid for these goods. However, the parties dispute who ultimately received these payments. Carlisle often transferred money to Americas rather than directly paying Pecom for the goods Carlisle received. Plaintiff alleges that Americas failed to remit a total of $403,815.88 that Americas received from Carlisle as payment for Pecom products. Defendants, on the other hand, claim that any portion of Carlisle's payments that Americas did not forward to Pecom was retained to cover unpaid commissions and shipping expenses that Pecom allegedly owed Americas. Defendants further claim that they made a payment of $12,213 on an invoice that they claim Carlisle had already paid Pecom for, and that Pecom has never reimbursed Americas for this double payment. In their various counterclaims, Defendants seek to hold Plaintiff liable for the alleged unpaid commissions, expenses, and double payment.

Case No. 5:04-CV-2433
Gwin, J.

Defendants also seek to hold Plaintiff liable for losses that Americas experienced as a result of Pecom's alleged interference with the business and contractual relationship between Americas and Carlisle. Defendants claim that Eduardo Marconetti and Marina Fernandez, employees of Pecom, made false statements during a May 2002 conference call with Defendant Stair and representatives of Carlisle. Defendants allege that during the conversation, Fernandez demanded, "Where's the money," insinuating that Stair had misappropriated funds that it received from Carlisle. According to Defendants, Carlisle refused to engage in further business with Americas as a result of this conversation. Responding, the Plaintiff argues that Defendants cannot show that any such statements were false when made or that they were the cause of Carlisle's decision to cease business relations with Americas. Plaintiff further argues that any statements Marconetty and Fernandez made to Carlisle regarding the missing payments were qualifiedly privileged and that Defendants can provide no evidence that the statements were made in bad faith.

## LEGAL STANDARD

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and

Case No. 5:04-CV-2433
Gwin, J.

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id*.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

Case No. 5:04-CV-2433
Gwin, J.

## ANALYSIS

I.   Unreimbursed Expenses, Double Payments, and Commissions

Defendants Americas and Stair counterclaim against Plaintiff for breach of the representation agreement. Specifically Defendants claim Plaintiff is liable to Defendants for the alleged unreimbursed shipping expenses and double payment and unpaid commissions. Defendants also claim that Plaintiff is liable under Ohio Rev. Code § 1335.11 for treble damages in connection with the alleged unpaid commissions. Plaintiff Petrobras seeks summary judgment on these claims, arguing that Defendants show no evidence of the alleged expenses, double payment, or unpaid commissions, and that Ohio Rev. Code § 1335.11 does not apply to the present dispute because Argentine rather than Ohio law governs the representation agreement between the parties.

A.   Expenses and Double Payments

Though Plaintiff is not required to *negate* Defendants' claims, Plaintiff is required to point the Court to some portion of the record demonstrating an absence of material fact. *See Celotex*, 477 U.S. at 323. For example, in *Celotex*, the Supreme Court found that the moving party met its burden by pointing out that the nonmoving party "had failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to petitioner's asbestos products." *Id.* at 320. Plaintiff has failed to meet this initial burden with regard to the alleged unreimbursed shipping expenses and double payment. In its motion for summary judgment, Plaintiff does little more than state that Defendants can provide no evidence of any such expenses or commissions. Plaintiff points to no aspect of the pleadings or other portion of the record calling into doubt Defendants' ability to produce such

Case No. 5:04-CV-2433
Gwin, J.

evidence.

Defendants on the other hand, offer Stair's affidavit as support for their claims. Stair refers in the affidavit to records it received from Petrobras during discovery, in which Plaintiff allegedly claims that "has offset by credit notes, a total of $222,060.22 of Americas's expenditures."[4/] Plaintiff does not contradict this assertion, but rather argues that it cannot be considered because it is hearsay. However, the records in question are admissible as business records under Federal Rule of Evidence 803(6), which provides that records "kept in the course of a regularly conducted business activity" are exempted from the general rule that the Court many not consider hearsay evidence. Additionally, any statements the Plaintiff makes within those records qualify as admissions by a party-opponent and thus are considered to be non-hearsay under Federal Rule of Evidence 801. Plaintiff further argues that the Court cannot consider this evidence because Defendants did not submit the actual records as required under Federal Rule of Evidence 1002. However, for the purposes of summary judgment, the parties generally need not present the evidentiary materials in a form that would be ultimately admissible at trial, *Celotex*, 477 U.S. at 324. Thus, despite Plaintiff's objections, it has failed to meet its initial burden of demonstrating that the record shows a lack of a genuine issue of material fact as to Defendants' claims.

B.      Applicability of Ohio Rev. Code § 1335.11

Plaintiff similarly argues that the Court should grant summary judgment with regard to Defendants' claim for various unpaid commissions. Just as with the alleged expenses and double payment, Plaintiff does no more than merely assert the Defendants have provided no evidence of the unpaid commissions. Plaintiff

---

[4/] Stair Aff. 2.

Case No. 5:04-CV-2433
Gwin, J.

fails to identify any portions of the record that might suggest such evidence does not exist. In fact, while making this argument Plaintiff simultaneously attaches to its motion Defendant Stair's responses to Plaintiff's interrogatories, in which Stair references specific invoices for which Plaintiff allegedly has not paid Defendants a commission.[5/] If anything, the documents that Plaintiff submits shows that there remains a genuine issue of material fact with regard to the unpaid commissions.

Plaintiff also argues that Defendants' claim must fail because Ohio Rev. Code § 1335.11 does not apply to the representation agreement between the parties. Section 1335.11 deals narrowly with the availability of exemplary damages for unpaid commissions in dealings between a principal and a sales representative. The statute defines "principal" as a person who engages in "the business of manufacturing, producing, importing, or distributing one or more products for sale to customers, ... utilizes one or more sales representatives to solicit orders for those products, ... [and] compensates the sales representatives in whole or in part by commission." *Id.* at § 1335.11(A)(2). It likewise defines "sales representative" as "a person who contracts with a principal to solicit orders for a product or orders for the provision of services and who is compensated, in whole or in part, by commission . . ." *Id.* at § 1335.11(A)(3). Where such a relationship exists, the statute provides that, under certain circumstances, a sales representative can seek treble damages for any unpaid commissions. *Id.* at § 1335.11(D).

Plaintiff argues that under traditional choice of law principles, Argentine rather than Ohio law governs the contract, thus precluding application of Ohio Rev. Code § 1335.11.[6/] However, Plaintiff's

---

[5/] Def.'s Resp. To Pl.'s Interrog. # 9.

[6/] Plaintiff cites *Gries Sports Enterprises, Inc. v. Modell*, 473 N.E.2d 807 (Ohio 1984), which sets forth the
(continued...)

-10-

Case No. 5:04-CV-2433
Gwin, J.

reliance on choice of law analysis is misplaced. Section 1335.11 is clear in its intent to reach the specific situation described above irrespective of what forum's law ultimately governs the interpretation of any contract between the parties. Subsection (F)(2), which states that, "[a]ny provision in any contract between a sales representative and principal is void if it purports to . . . [m]ake the contract subject to the laws of another state," evidences the General Assembly's intent to have Section 1335.11 apply.

Thus, regardless of whether Ohio or Argentine law generally governs the present representation agreement, Defendants may seek treble damages under Ohio Rev. Code § 1335.11(D) as long as they can show that Plaintiff and Defendant engaged in the type of sales representation relationship envisioned by the statute, that Plaintiff failed to pay all commissions owed to Defendants, and that this failure "constituted willful, wanton, or reckless misconduct or bad faith."

II.     Tortious Interference and Business Disparagement Claims

In connection with the statements that Pecom allegedly made to a Carlisle during the conference call in May 2002, Defendants seek to hold Plaintiff liable for interference with Americas' business or contractual relationship with Carlisle. Plaintiff argues the Court should dismiss all such claims.

A.      Tortious Interference with Contract and Business

Ohio law recognizes causes of action for both tortious interference with a business relationship and tortious interference with contract rights. *See A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (1995). They differ only

---

[6]/(...continued)
elements to be used to determine for the purposes of a contractual dispute which forum's law governs the contract at issue in the case.

-11-

Case No. 5:04-CV-2433
Gwin, J.

in that the former tort does not require proof of a contractual relationship. *See id.* "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Id.*; *Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174 F.3d 733, 741 (6th Cir.1999).

A party alleging tortious interference with contract must prove the following elements: (1) the existence of the contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (1995).

To show tortious interference with a business relationship, the party must prove in place of the first three elements of the above test: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge of this prospective relationship; and (3) the wrongdoer's intentional interference with the prospective relationship. *See Chrvala v. Borden, Inc.*, 14 F. Supp.2d 1013, 1023 (S.D. Ohio 1998).

In the present case, Plaintiff argues the Defendants show no evidence that Plaintiff intentionally interfered with Americas's contractual or business relationship with Carlisle or that any statements Plaintiff allegedly made regarding the missing payments caused Carlisle to end that relationship.

Dealing first with the existence of a contractual or business relationship and the Plaintiff's knowledge of such relationship, Americas enjoyed contractual relations with Carlisle for years, and Pecom knew of those contracts and other relations. Apart from the relation that Americas had with Carlisle as an agent for

-12-

Case No. 5:04-CV-2433
Gwin, J.

Pecom, Americas claims that they had a separate independent relationship with Carlisle for other products and services. To support this claim, Defendants offer Stair's affidavit, in which he states, "Americas had other contracts with Carlisle for the sale of products unrelated to Petrobras."[7] However, regarding Americas's other relations with Carlisle, Defendants offer no evidence at all that Plaintiff knew of the alleged independent dealings.

Nor do Defendants provide any evidence showing that Plaintiff's alleged statements caused Carlisle to end its relationship with Americas. Americas offers no evidence from Carlisle officials suggesting that the statement had any relation to Carlisle's ongoing relations with Americas. Carlisle likely ceased purchasing Pecom products through Americas merely because Americas was no longer acting as Pecom's importer of record or sales representative. Defendants' cite to nothing in the record to show that Carlisle would have continued its alleged independent dealings with Americas or that it would have accepted through Americas rubber products from a supplier other than Pecom. To show that this is mere speculation on the part of Defendants, Plaintiff highlights Stair's deposition testimony, in which he admits that no one from Carlisle indicated that they stopped doing business with Americas because of Pecom's statements.[8]

There is similarly a dearth of evidence demonstrating Plaintiff's intention was to interfere with Americas's relationship with Carlisle or that Pecom's inquiry lacked justification. Ohio courts have construed lack of justification to mean that the interference was "improper." *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853, 858 (1999) (citing Restatement (Second)

---

[7] Stair Aff. 4.

[8] Stair Depo. 192:23-193:23.

Case No. 5:04-CV-2433
Gwin, J.

of Torts § 767, cmt. b). As a guiding measure of what conduct amounts to improper interference, the Ohio Supreme Court has adopted the Restatement (Second) of Torts § 767, which provides:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*See id.* at 178; *Petrovski v. Federal Express Corp.*, 240 F. Supp.2d 685, 690 (N.D. Ohio 2002).

Defendants assert that Pecom intended its statements to insinuate that Americas and Stair had misappropriate Carlisle funds. This assertion, if supported, may have created an issue of fact as to whether Pecom acted with an improper motive or whether Pecom made the alleged statements with an interest in impugning Americas rather than merely inquiring into why it had not received payment for its products. However, the Defendants offer nothing more than their own speculation and conclusory assertions.

Moreover, Plaintiff points to evidence tending to negate these assertions. Most notably, at his deposition, Stair testified that at the time the conference call occurred, neither Carlisle nor Americas had paid Pecom for all of the products Carlisle had ordered and that it was unclear at that time, what portion of the missing payments was due to Carlisle's own failure to pay for the goods and what portion was due to Americas's failure to remit payments to Pecom.[9] If anything, this shows that Plaintiff was acting with a proper motive and interest.

A thorough review of the record thus shows that Defendants failed to establish a genuine issue of

---

[9] *See* Stair Depo. 154-156.

-14-

Case No. 5:04-CV-2433
Gwin, J.

fact with regard to the elements of tortious interference with contract or business relations. Even if Defendants had met their burden regarding the above discussed elements, the Court finds that the statements Pecom allegedly made to Stair in Carlisle's presence are qualifiedly privileged. Under Ohio law, a defendant may assert a qualified privilege in tortious interference cases. *Doyle v. Fairfield Mach. Co., Inc.*, 120 Ohio App.3d 192, 218, 697 N.E.2d 667, 683-84 (1997). This privilege attaches to all statements that are "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *See Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713, 718 (1975); *A & B-Abell Elevator Co.*, 73 Ohio St.3d at 8, 651 N.E.2d at 1290.

The issue of privilege is one of the key elements in a tortious interference claim and the plaintiff bears the burden to show that a defendant's actions are neither justified nor privileged. *See Super Sulky, Inc.*, 174 F.3d at 742. To overcome a defendant's assertion that a qualified privilege exists, the plaintiff must show, by clear and convincing evidence, that the defendant acted with actual malice. *Doyle*, 120 Ohio App.3d at 218, 697 N.E.2d at 683-84 (citing *A & B-Abell Elevator Co., Inc.*, 73 Ohio St.3d at 11-12, 651 N.E.2d at 1292-93). A showing of malice requires more than a showing of improper motive. *A & B-Abell Elevator Co., Inc.,* 73 Ohio St.3d at 11, 651 N.E.2d at 1292. Instead, a plaintiff must show that defendants made the statements with knowledge of falsity or with reckless disregard as to their truth or falsity. Reckless disregard is present where the defendant entertained serious doubts as to the truth of the statements. *Id.* at 12-13, 651 N.E.2d at 1292-93.

The statement, "Where's the money," that Plaintiff allegedly made to Stair and Carlisle, involves

Case No. 5:04-CV-2433
Gwin, J.

matters of interest to the Plaintiff in the conduct of its business. Because of the nature commercial relationship between Pecom, Carlisle, and Americas, Pecom had an interest in discussing any missing payments with both Carlisle and Americas. As shown above, even Pecom was not sure regarding the status of the payments. That alone is enough for the privilege to Plaintiff's alleged statements. If, in addition, Pecom believed that Americas was indeed retaining Carlisle's payments, it had an even heightened interest in discussing this with Carlisle so that it could prevent Carlisle from making anymore payments to Americas.

As Plaintiff has asserted a valid privilege, Defendants bear the burden of showing that Plaintiff made the alleged statements with reckless disregard for the truth. Not only do defendants fail to meet this burden, but they provide no evidence showing that any alleged statements regarding missing payments were untrue. Instead, they admit that they were retaining Carlisle's payments.

Defendants argue that Plaintiff's statements insinuated that Defendants misappropriated funds and that this insinuation was false. The challenged statement "Where's the money" however does not imply a conversion. And Pecom offers no support that any other statements were made. With no facts to suggest otherwise, this statement can only be viewed as what it patently appears to be – a truthful inquiry into why either Carlisle or Americas had not paid Pecom for various shipments of Pecom goods.

B.      Ohio Deceptive Trade Practices Act

Defendants similarly argue that Plaintiff's alleged statements constitute business disparagement. The Ohio Deceptive Trade Practices Act provides in pertinent part that "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . [d]isparages the goods, services, or business of another by false representation of fact." OHIO REV. CODE

Case No. 5:04-CV-2433
Gwin, J.

ANN. § 4165.02(A)(10) (West 2004). Under Section 4165.03 of the Act, any person injured by such deceptive trade practices may sue for damages or injunctive relief.

In this case, Defendants have failed to establish their claim for deceptive trade practices. In order to prevail on a claim of deceptive trade practice, a Defendants must show that Plaintiff made a *false representation of fact*. Here, the statements that Defendants argue give rise to their claim of deceptive trade practices do not amount to a false representation of fact, but, rather, a protected inquiry into matters of interest to Plaintiff. As shown above, defendants show no facts suggesting that Plaintiff's alleged statements were not true. Nor do Defendants show any facts supporting their assertion that Plaintiff's falsely represented them as having misappropriated funds.

Also as set forth in the tortious interference analysis, Defendants have failed to produce evidence that would establish that the alleged disparaging communication caused Carlisle to cease business relations with Americas.

Moreover, Ohio courts apply the same qualified privilege analysis to disparagement claims as they do to tortious interference claims. *See A & B-Abell Elevator Co., Inc.,* 73 Ohio St.3d at 14, 651 N.E.2d at 1294. Thus, any statements Defendants claim that Pecom made relating to Carlisle's payments are similarly privileged here. As such, the Court Grants summary judgment as to both Defendants' tortious interference and business disparagement claims.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for summary judgment as it pertains to Defendants' claims for unreimbursed expenses and double payments and unpaid commissions.

Case No. 5:04-CV-2433
Gwin, J.

The Court **GRANTS** summary judgment as it pertains to Defendants tortious interference with contract and business relations and business disparagement claims.

    IT IS SO ORDERED.


Dated: September 1, 2005                          s/ *James S. Gwin*
                                                                               JAMES S. GWIN
                                                                               UNITED STATES DISTRICT JUDGE